UNITED STATES, Appellant and Cross-Appellee
v.
EMMETT HATCHETT, Private E–2, U. S. Army, Appellee
and Cross-Appellant
2 USCMA 482, 9 CMR 112

No. 1137

Decided May 8, 1953

CAPT Irvin M. Kent, U. S. Army, 1ST LT Bernard A. Feuerstein, U. S. Army, and 1ST LT Martin Blackman, U. S. Army, for Appellant and Cross-Appellee.

LT COL George M. Thorpe, U. S. Army, and 1ST LT Ronald C. Meteiver, U. S. Army, for Appellee and Cross-Appellant.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was tried on two specifications of absence without leave in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680, one specification of unlawfully appropriating an automobile, and two specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. He pleaded guilty to the two specifications of absence without leave and not guilty to the other alleged offenses. The general court-martial found him guilty but made certain substitutions with regard to the specifications alleging larcenies. He was sentenced to a dishonorable discharge, total forfeitures, and one year's confinement. The convening authority disapproved the substituted findings, but otherwise approved. The board of review reversed the findings on the ground the accused had been compelled to incriminate himself on the offense involving the misappropriation of the automobile and granted a rehearing without reference to the separate specifications which were admitted by plea. We can only conclude

from this that the board of review either overlooked the pleas of guilty to those offenses or concluded they were so unimportant that they should fall with the misappropriation conviction. We believe it would be better for the order to be more specific with respect to all specifications but in view of our disposition of the principal questions, any uncertainty in the ruling is of no moment.

The case is before us on a certificate of The Judge Advocate General of the Army who seeks to have us answer two questions, and on petition for review of the accused which we granted to permit arguments on one assignment of error. The Judge Advocate General's certificate involves the two following questions: (1) Was the accused compelled to incriminate himself when testifying for the limited purpose of supporting his contention that a confession was involuntary? (2) If so, was the error cured by him when he testified in his own behalf? Accused in his petition asserts that his substantial rights were materially prejudiced by the instructions of the law officer defining reasonable doubt.

I

We shall first consider the questions which are certified by The Judge Advocate General. They pertain solely to the specification alleging wrongful appropriation, so the facts and circumstances pertaining to that offense only will be related.

The Government had established that accused contracted with a Captain Goodlett to wash his car. He was to have the work done by noon the next day but when he was unable to complete the task, he contacted the Captain and informed him he was unable to return the car at the appointed time. The Captain extended the time until later in the afternoon but directed that the car be returned before 5:00 p.m. Instead of doing the work on the base, the accused drove to a nearby city, converted the car to his own use, and did not return until 2:00 o'clock the following morning at which time he was arrested as he attempted to drive on the post. He was accompanied by other enlisted persons at the time of arrest.

During the course of the trial, the Government sought to introduce a pretrial statement made by the accused shortly after he was arrested. It was the contention of defense counsel that the statement was not voluntary, and the accused took the stand for the limited purpose of giving evidence on this question. Apparently the contention of the defense was twofold. First, that he was told he could return to his unit if he would make a statement (inducement); second, that the statement was taken between 2:00 a.m. and 2:30 a.m. and that because of the time and delay, the accused was so sleepy and tired he was not fully aware of the contents of the statement nor of his rights not to be required to make any statement. After defense and trial counsel had completed their examination and cross-examination, the law officer asked the following questions:

"Q. How many people were in the car with you that night?

A. Four (4), not counting myself, sir. Five (5) counting myself.

Q. And when were you arrested?

A. I was arrested on Sunday night, sir.

Q. And you were arrested at the gate?

A. Yes sir.

Q. How long did they keep you at the gate?

A. They keep me, I'd say, approximately twenty (20) minutes, sir. While they called up down at the whatcha call it. The MP's come down there and I drove the car back to the Provost Marshal's sir.

Q. And then how long were you in the PM office before you talked to the man who sat on the stand just ahead of you and who testified?

A. Half an hour, sir.

Q. I see. Then you were the first man interviewed by this CID agent?

A. Yes sir."

The board of review was of the opinion this examination violated the accused's right against self-incrimination.

The members of the board reasoned that he took the witness stand for the limited and sole purpose of giving evidence as to the voluntariness of the statement, and the questions asked required him to testify on the merits of the case.

The first question certified by The Judge Advocate General asks whether this was error. We have grave doubts that the law officer offended against the latitude permitted on cross-examination and we set forth our reasons, principally, to show there was no attempt to abuse flagrantly the court processes and to place the accused in a situation where he would be required to testify as a witness to lessen the effect of damaging evidence. As we understand the issue of voluntariness it revolved around the two contentions previously mentioned and the questions complained about could have only been asked to explore those contentions. Prior to the time accused testified, one of the investigators had testified that certain persons were taken into custody for interview in connection with this offense; that they were held at military police headquarters and that after accused gave his statement he waited for the remaining persons and they were returned in a group to their units. The accused was then called and gave generally his version which in some details was at variance with that given by the investigator. Based on this there could have been at least two perfectly good and valid reasons prompting the law officer to ask the questions to test the probability of accused's story. The first was the length of time the accused was held before giving his statement because if he had to wait until a number of witnesses had been interviewed, it would seem more reasonable that he was partly asleep when called. On the other hand, if he was the first to be called, it would lessen the opportunity of his becoming drowsy. The number of witnesses involved and the order of their interviews would shed light on this assertion. It seems plausible that the law officer was pursuing this line of thought until he found that the accused was interviewed first and that the time interval between arrest and the giving of the statement was about one-half hour. He then abandoned this approach which could have been beneficial to the accused had the answers been different. The second reason would be to test accused's story of inducement. If, as the previous witnesses contended, accused voluntarily waited for the other witnesses to complete their interview before leaving for his unit, his claim that the offer of the investigator to permit him to return to his organization induced him to sign the statement is rendered more dubious depending to some extent on the number involved.

It is difficult to mark with precision the area of legitimate cross-examination when a witness is testifying generally, but it is more difficult when called for a limited purpose. Sometimes questions which have a legitimate tendency to test credibility bring out facts and circumstances which may raise questions concerning incrimination. Even though an accused testified for a limited purpose this does not preclude the cross-examiner from probing into fields which may weaken or destroy his evidence. It may be that in certain instances the answers might indirectly tend to connect the accused with the crime or to identify him as being a possible perpetrator of an offense, but if they are relevant to test his credibility, the questions are proper and must be answered. An accused voluntarily elects to take the witness stand and in so doing he is subject to being cross-examined on those matters which he testified about on direct examination and to other matters which affect his credibility as a witness.

While we have suggested a possible answer to the first question we need not bottom our decision on that ground because if any error arose by the law officer exceeding the fair bounds of cross-examination it was cured by the subsequent testimony of the accused. His evidence not only established his guilt of the offense but also it paraded before the court-martial facts and circumstances he complains were brought to its attention by the law officer. This is the substance of the story related by him: He testified he was to return the car at 5:00 p.m. on the afternoon in question; that

he took the car into town without authorization; that he put some miles on it driving around town; that he went to visit his girl; that he picked up a sergeant and other enlisted men; that he arrived at the camp gate at 2:00 a.m.; that he was driving the car when he was taken into custody; and that he was taken to military police headquarters for questioning. In view of this testimony it is difficult for us to find any reasonable basis for prejudice. Considering the theory of defense, if any, and the procedure adopted, the question narrows to whether the testimony was obtained prematurely and if so, can the timing be the basis of prejudice? Assuming that when produced it might be, because not relevant at that time, it would be ridiculous to reverse a case because evidence was placed in the record by the Government prior to the time the accused voluntarily and judicially confessed to the same state of facts. That is not of controlling importance as the right not to be required to incriminate oneself is a privilege which must be claimed or it is waived. Valuable as it may be, its violation can be cured by the voluntary act of the person injured.

Appellate defense counsel in seeking to avoid the consequences of accused's taking the stand contend he had no alternative other than to testify in his own behalf, because of the damaging nature of the testimony which was brought out while inquiring into the voluntariness of the confession. They contend the second appearance on the witness stand was for the sole purpose of lessening the damage done by the previous questions of the law officer. The facts of the case simply do not sustain this contention. It is difficult to determine the theory of the defense at the trial but it could not have been that the accused was not in the car. Stated in the most charitable way, if there was any theory of defense, it would be that accused did not intend to deprive the owner temporarily of his car or that he had implied authority to use it. The questions by the law officer did not affect that issue, they did not suggest a theory for either side, and they did not compel the accused to take the stand to escape any unfavorable inference which was not overwhelmingly established by other prosecution evidence.

It would require a fanciful imagination to hold that an accused was required to testify on the merits to overcome the damaging effect of such inconsequential evidence, particularly where, as here, he went so far as to judicially confess to all material elements of the offense. He became a witness without making any contention that he was forced to do so by the acts of the law officer and he volunteered the real damaging testimony on direct examination. It was not extracted as a result of clever or adroit cross-examination nor as a product of untimely disclosures during the Government's case. Our interpretation of the record forces us to conclude the testimony given by the accused as a witness on the merits was voluntary in every sense of the word.

Judge Brosman in his concurring opinion in United States v. Edward J. Collier (No. 467), 5 CMR 3, decided August 12, 1952, discussed his views on this subject in a somewhat similar setting. He concluded the accused cured any error in that case by testifying. His reasons are found in the following quotation:

> "However, it appears that the accused subsequently, of his own volition, took the stand as a witness in his own defense. He thereby waived his privilege against self incrimination with respect to all matters relevant to the offense of which he was then charged. The Manual for Courts-Martial, supra, paragraph 149b (1); Raffel v. United States, 271 U.S. 494, 70 L ed 1054, 46 S Ct 566; United States ex rel Rennie v. Brooks, 284 Fed 908. Where—as here, and under these particular circumstances—nothing indicates that the assumption of the stand by the accused was due to the earlier incriminatory admission improperly elicited from him, the error must be regarded as vitiated."

The majority of the Court did not adopt his rule in that case because in disposing of the assignments of error,

it was found not necessary to reach that issue. However, in this instance we think the rule he announced is clearly applicable and we so hold.

II

The last question for consideration is raised by accused in his petition. The error assigned is that the law officer erred in giving instructions on reasonable doubt. The instruction complained of as extracted by the accused is:

> "Second, that in the case being considered, if there is a reasonable doubt, as to the guilt of the accused, the doubt shall be resolved in favor of the accused and you shall bring in a verdict of not guilty and he shall be acquitted; In other words, if there is a balance, you have to resolve the question in favor of the accused."

The difficulty with the assignment is that the particular quoted portion of the instruction is torn from a complete charge and at first blush it gives a misleading, confusing and erroneous impression. However, there is a well-understood rule of law, i.e., that instructions must be considered in their entirety and if, when gathered together by their four corners, they state the law properly and with sufficient clarity to be understood by the members of the court-martial, then they are not prejudicial even though one sentence may be technically incorrect. In this connection there were other instructions given by the law officer which influence our determination that, when considered as a whole, the charge could not be interpreted as changing another well known and easily understood rule of law that the Government must prove the accused guilty beyond a reasonable doubt.

From an entire review of the instructions given by the law officer, however, we are unable to see how the rights of the accused have been materially prejudiced. In addition to the instructions complained of, the law officer also stated:

> "First, that the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond any reasonable doubt;
>
> "Second, that in the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt shall be resolved in favor of the accused and you shall bring in a verdict of not guilty and he shall be acquitted; In other words, if there is a balance, you have to resolve the question in favor of the accused.
>
> "If there is a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no reasonable doubt; and
>
> "The burden of proof to establish the guilt of the accused beyond every reasonable doubt is upon the Government."

It would take a very careful reader to seize on the statement which appears to be incorrect and even then, if analyzed carefully, it is doubtful an erroneous rule is announced. True it is that any reasonable doubt should be resolved in favor of the accused and the instruction so states. But if a court member was trying to rationalize on whether he entertained a reasonable doubt and he had reached a stalemate on that, he should resolve that doubt in favor of the accused. Assuming a court member would not make that refined analysis, it must be kept in mind that one of the better known principles of law is that the guilt of any accused must be established beyond a reasonable doubt. The court was definitely apprised of this rule in the paragraph before and the two paragraphs following the questionable concept. There was only one statement which might be construed as being wrong and this was sandwiched in between two proper, easily understood dissertations on the law. In addition the statement immediately following shows the procedure to be followed if there was any doubt. Viewing the four quoted instructions as one, we are impressed with the fact that the tenor of the language emphasizes "proof beyond any reasonable doubt" and this is the only reasonable interpretation the court would place on the charge.

Entirely apart from this, there is an additional reason why the substantial rights of the accused have not been materially prejudiced. He pleaded guilty to the specifications of absences without leave and the findings with regard to Specifications 2 and 3 under Charge II were set aside. Any possibility of prejudice to his rights under those alleged offenses is now non-existent. The only remaining charge where he could have been prejudiced is the one stating a wrongful appropriation of the automobile. Interpreted under any reasonable construction, the statement of the accused, when he was a witness on the merits, admits fully the essential elements of the crime of wrongful appropriation. Regardless of the possible inaccuracy in the instruction, there was only one quantum of evidence of guilt in this case and it exceeded reasonable doubt. To put it mildly, the evidence of guilt was conclusive. Under those circumstances, minor inaccuracies in instructions cannot be inflated into prejudicial error.

The first question certified by The Judge Advocate General of the Army is answered in the negative; but, even assuming a different answer, the second question is answered in the affirmative. The contention of the accused is overruled and the decision of the board of review is reversed.

Chief Judge QUINN and Judge BROSMAN concur.