UNITED STATES, Appellee,

v

JOHN E. BERGEN, Private E–2, U. S. Army, Appellant

6 USCMA 601, 20 CMR 317

602

603

No. 6642

Decided January 27, 1956

*First Lieutenant Gene E. Overbeck* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Joseph L. Chalk* and *Captain Frank C. Stetson.*

*First Lieutenant Edward S. Nelson* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted of a violation of a general order prohibiting the use of a central nervous system stimulant, such as ephedrine and its related compounds. His conviction and sentence which includes a dishonorable discharge was affirmed by intermediate authorities. The accused appeals to this Court. Two errors are assigned for our consideration. The first concerns the admissibility of certain answers by a witness testifying by written deposition. The second relates to the law officer's instructions on ignorance of fact as a defense.

About the sixteenth or seventeenth of September 1954, the accused was observed in the orderly room by his detachment commander. His gait was unsteady and his eyes were glazed. Examining the accused, the commander discovered "old and new needle marks" on both arms. The accused was taken to the hospital where he was again examined by a Dr. Pegg. Dr. Pegg was reasonably certain that a needle was the instrument which produced the punctures on the accused's arms because its marks are "fairly characteristic." A urine specimen was voluntarily provided by the accused. Subsequent analysis of the urine indicated that it contained methamphetamine, which was described by First Lieutenant H. J. Antonides, Chief of the Toxicology Section, 406th Medical General Laboratory, as a central nervous system stimulant of the same compound group as ephedrine. Lieutenant Antonides' qualifications as an expert include the award by Purdue University of a Doctor of Philosophy degree, with studies in pharmaceutical chemistry, organic chemistry and bio-

604

chemistry, plus fifty-four months experience as a university instructor in pharmacy and pharmaceutical chemistry.

Lieutenant Antonides' testimony was presented by the prosecution in the form of a written deposition. Defense counsel objected to the admission in evidence of certain of his answers which related to the urine analysis. It appears from the Lieutenant's testimony that a single analysis of the urine specimen was made. Some parts of the analysis were performed by members of the staff and others by himself. However, he had "no individual recollection" of any of the tests performed in the analysis. His testimony as to the efforts of the staff personnel, his own work, and of the final result was predicated entirely upon "the laboratory data." Looking at the records themselves "recall[ed] no specific memory to . . . [his] mind relative to this . . . specific individual . . . or the specimen T–3934." Replying to a direct question as to whether he could testify from memory and without reference to laboratory records in regard to the accused's urine specimen, Lieutenant Antonides said, "I will never testify as to any laboratory results or data concerning any case or specimen without reference to laboratory data." Asked to seal the records that were used in connection with his answers and to forward them to counsel representing the Government, the witness replied, "Direct orders from the Commanding Officer of the 406th Medical General Laboratory and army regulations prohibit my complying with your request."

The laboratory records were not forwarded, and consequently were not presented with the deposition when offered in evidence by trial counsel. Defense counsel objected to the answers regarding the analysis because the laboratory data was not included and because some of the answers were based upon information obtained from other persons.

At the outset, it is appropriate to consider whether the laboratory records were privileged. No regulation is cited which would preclude forwarding of an authenticated copy of the data for use with the deposition. The army regulation, SR 345–250–60, referred to by Lieutenant Antonides in answering the interrogatories regarding the record-keeping requirements of the Toxicology Section, does not prohibit the transmission of records for use in a court-martial. Certainly, the laboratory records were not confidential or classified. See AR 345–20, paragraph 8. Lieutenant Antonides did not refuse to testify to their contents. As a matter of fact, disclosure of the result is essential to the purpose for which the analysis is requested. It would appear, therefore, that the commanding officer's order restricting release of the laboratory data applied only to the original records, and did not prohibit the making and submission of copies. Hence, no cogent reason exists to justify withholding the laboratory records. Cf. United States v Hawkins, 6 USCMA 135, 19 CMR 261. The question then is whether the records constitute an integral part of the deposition.

To aid him in testifying, a witness may use a written memorandum or other writing. There are generally two occasions for such use. The first occurs when the witness's present recollection of the subject matter is uncertain and he needs to have his memory revived. Use of the memorandum in this instance is called refreshing or reviving the present recollection of the witness. The second situation arises when even after an inspection of a writing in which he has recorded the facts of his observation, the memory of the witness still cannot independently supply the testimony he is called upon to give. This is called a memorandum of past recollection recorded. Although the legal effects incident to each use are substantially different, they are "often confused." Wigmore, Evidence, 3d ed, § 725.

In the case of a memorandum to refresh the present recollection of the witness, only the testimony of the witness is admitted in evidence. The writing is not used evidentially, and it is normally not shown to the triers of fact,

**605**

although it may be used to test the credibility of the witness. People v Gezzo, 307 NY 385, 121 NE2d 380. In past recollection recorded, the memorandum itself is admitted in evidence. Halsey v Sinsebaugh, 15 NY 485, cited with approval in Parsons v Wilkinson, 113 US 656, 5 S Ct 691, 28 L ed 1037. See also: Wigmore, Evidence, 3d ed, § 738. Moreover, a material difference exists as to the predicate that must be established to justify use of the memorandum in each instance. The memorandum to refresh or revive the memory of the witness need not be one made personally by the witness. Goodfriend v United States, 294 Fed 148 (CA 9th Cir) (1923), rehearing denied February 11, 1924. And, since it is not itself admissible in evidence, a copy of the memorandum may be used without violating the best evidence rule. Goodfriend v United States, supra; Olmstead v United States, 19 F2d 842 (CA 9th Cir) (1927), rehearing denied July 18, 1927, aff'd 277 US 438. On the other hand, unless made in the regular course of business and independently entitled to admission on that ground, a memorandum of past recollection recorded must be based on the entrant's personal knowledge of the correctness of the facts. United States v Keppler, 1 F2d 315 (CA 3d Cir) (1924). Otherwise it requires identification by the informant, as well as the entrant, before it may be admitted as a memorandum of past recollection recorded. City of New York v Second Ave. R. Co., 102 NY 572, 7 NE 905; Annotation, 125 ALR 19, at page 150. A memorandum of past recollection recorded is also subject to the best evidence rule, and the original of the writing must be produced, unless it is shown to be unavailable. Wigmore, Evidence, 3d ed, § 749. Other differences exist but we need not catalogue them. See: 58 Am Jur, Witnesses, §§ 584–593.

From an examination of Lieutenant Antonides' testimony, it clearly appears that the laboratory data did not refresh or revive his present recollection of the analysis. Furthermore, his testimony as to the tests performed by members of his staff was "based upon the laboratory data." Unmistakably, therefore, the records were memoranda of the witness's past recollection recorded or business entries. In either case, the original or an authenticated copy of the records should have been attached to the deposition. The answers were offered by the prosecution as part of its case, and it had the burden of producing them and laying a proper foundation for their admission. United States v Jewson, 1 USCMA 652, 658, 5 CMR 80. Not having done so, the accused could properly object to the answers given by Lieutenant Antonides which consisted of a mere reading of the laboratory data. At the very least, he was entitled to examine the records, and if he found irregularities or alteration, he was entitled to have "the jury's attention . . . called to them." Jewett v United States, 15 F2d 955 (CA 9th Cir) (1926).

The Government contends that the accused waived any error based upon the absence of the records because he did not interpose an appropriate objection at the time of the taking of the deposition. In United States v Bryson, 3 USCMA 329, 336, 12 CMR 85, we held that a failure to object to a defect in a deposition constitutes a waiver, if the defect is one which "may have been obviated by a retaking of the deposition." This case does not fall within that category.

Lieutenant Antonides' deposition was based on written interrogatories and cross-interrogatories. Counsel designated for the Government and the accused evidently prepared the questions with care. They foresaw the possibility that the witness would not be able to recall the results of a particular test out of the many he performed at the laboratory. Consequently, they requested that the laboratory data be forwarded for use at the trial. Plainly, Lieutenant Antonides' refusal to submit the records was not anticipated. A witness is expected to testify according to his present recollection. He may, of course, refresh his recollection with a mem-

606

orandum or other writing. But if these fail to revive his memory, only the memoranda can state the facts. It is not without significance, therefore, that the prosecution attempted in the deposition to establish a foundation for the admission of the records as official records or business entries, or as a memorandum of past recollection recorded. Each of these alternatives requires actual production of the records to establish the facts set out in them.

As previously noted, the Government refers us to no regulation which prohibits the release for a court-martial trial of either the original or an authenticated copy of the laboratory data. As to the order of the commanding officer of the Medical General Laboratory, we cannot charge defense counsel with knowledge of the internal regulations of a laboratory selected by the prosecution, in order to hold him accountable for a failure to anticipate Lieutenant Antonides' refusal to submit the records. Under the circumstances, the accused did not waive his right to object to the admission of the answers of the witness which were based merely upon a reading of the laboratory data.

Error in the admission of evidence justifies setting aside a conviction only if the improper evidence is prejudicial to the accused. Consequently, the Government maintains that the challenged answers were not material to its case. The theory of the defense gives support to this contention.

A Private Franklin A. Fineberg testified as the only defense witness. He said that on the evening of September 16, 1954, the accused, several other persons, and he, were seated at the same table in the Club Medico. Fineberg had an ampule of "Helopon," which he described as a central nervous system stimulant. Parenthetically, we note that Lieutenant Antonides identified "Hilopon" as a Japanese trade name for methamphetamine. Fineberg put the ampule in his drink in "a secret manner." To his knowledge, no one, including the accused, knew what he had done. About twenty minutes later, he left the table to dance. On his return, he found that his glass had been emptied. He asked about his drink, and the accused told him that he had drunk it. Fineberg further testified that, although he could taste the stimulant in his drink, he doubted that "anyone who hasn't used it" could detect its presence. If Private Fineberg's "Helopon" is regarded as the same product as Lieutenant Antonides' "Hilopon," it can reasonably be argued that the defense itself established the fact that the accused had used methamphetamine. Consequently, even if the result of the urine analysis was erroneously admitted in evidence the error would not have harmed the accused. United States v McNeill, 2 USCMA 383, 9 CMR 13. We would then be brought to the question of whether the accused knew that Private Fineberg's drink was adulterated with the stimulant. If the evidence reasonably shows that he was ignorant of the presence of the drug, he had a valid defense to the charge, and he was entitled to full and correct instructions framing the issue for the court-martial. United States v Cavett, 6 USCMA 235, 19 CMR 361.

The law officer instructed the court-martial on ignorance as a defense. He advised the court that the law requires that the ignorance be both "honest and reasonable under the circumstances." In United States v Greenwood, 6 USCMA 209, 19 CMR 335, we held that such an instruction, in a case of this kind, is erroneous. We pointed out that, in the absence of statute or ancient custom, negligence alone does not determine criminality. Therefore, we held that the defense of lack of conscious knowledge of the presence of a prohibited substance must be tested by "the touchstone of honesty, rather than that of honesty plus reasonableness." United States v Greenwood, supra, page 216. Not every instructional error, however, requires reversal.

Although this Court will not speculate as to the court-martial's interpretation of an erroneous instruction (United States v Williams, 1 USCMA 186, 2 CMR 92), it must reasonably appear that the instruction confused or misled the court members in their delibera-

**607**

tions before it will be regarded as prejudicial. United States v Fields, 2 USCMA 278, 8 CMR 78. In that connection, the instructions must be considered in their entirety. We stated the general rule in United States v Hatchett, 2 USCMA 482, 488, 9 CMR 112:

". . . However, there is a well-understood rule of law, i. e., that instructions must be considered in their entirety and if, when gathered together by their four corners, they state the law properly and with sufficient clarity to be understood by the members of the court-martial, then they are not prejudicial even though one sentence may be technically incorrect."

Here, the instructions pertinent to our problem are as follows:

"The accused has introduced certain testimony tending to show mistake. He has shown that at the time of the alleged offense of using a central nervous system stimulant, to wit: methamphetamine, the accused was ignorant of the fact that the glass of liquid that he drank at the time and place alleged in the specification contained a central nervous system stimulant, to wit: methamphetamine. With respect to this evidence you are advised that if the accused was laboring under such ignorance and if his ignorance was honest and reasonable under the circumstances, he cannot be found guilty of the offense charged against him, for it is essential to a conviction of this offense that the prosecution must prove beyond a reasonable doubt that accused had knowledge that the drink contained the central nervous system stimulant referred to in the specification, that is, methamphetamine.

"The burden is upon the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the accused was not ignorant of the fact that the liquid contained methamphetamine, or a central nervous system stimulant, to wit: methamphetamine, you must acquit the accused."

These instructions invite comparison with those in United States v Lampkins, 4 USCMA 31, 15 CMR 31, and in United States v Greenwood, supra. The Greenwood decision does not set out the erroneous instructions at length, but in an important particular it is almost identical with that which appears in our opinion in the Lampkins case. In each of those cases, the law officer stressed the existence of negligence as a permissible basis for conviction. He specifically advised the court in both that if the accused's ignorance or mistake was "the result of carelessness or fault" on the part of the accused, it was not a defense. No such accent appears here.

Both before and after the reference to reasonableness, the law officer emphasized the fact that the court must find actual knowledge on the part of the accused of the presence of the stimulant in Fineberg's drink. At no other point in the instructions is there even a suggestion that the court could return a finding of guilt upon constructive knowledge based upon the accused's negligence. In our opinion, therefore, the law officer's erroneous reference to the reasonableness of the accused's ignorance did not mislead the court. Reasonably considered, it was "technically incorrect," but not prejudicial. United States v Hatchett, supra; United States v Crawford, 6 USCMA 517, 20 CMR 233.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring in the result):

I concur in the result.

The principal reason for not concurring outright is that I prefer not to join in the discussion on the admissibility of the deposition. A serious problem of waiver is presented but the entire issue becomes unimportant in view of the holding that the evidence of the absent witness was nonprejudicial.