UNITED STATES, Appellee

v

JAMES L. BULLOCK, Sergeant First Class, U. S. Army, Appellant

12 USCMA 142, 30 CMR 142

No. 14,290

Decided January 27, 1961

*First Lieutenant Burnett H. Radosh* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel W. H. Blackmarr.*

*First Lieutenant Barry L. Kroll* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. Mc-Conaughy* and *First Lieutenant Jerome Nelson.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convened at Fort Campbell, Kentucky, convicted the accused on August 25, 1959, of a large number of specifications alleging that he issued checks and thereafter wrongfully and dishonorably failed to maintain sufficient funds in the bank to pay for them, and of a number of specifications alleging wrongfully and dishonorably failing to pay debts, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court sentenced the accused to a dishonorable discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted grade, and confinement at hard labor for five years. The convening authority approved most of the findings of guilty and the sentence, but the board of review mitigated the dishonorable discharge to a bad-conduct discharge and reduced the period of confinement to one year. We granted review to consider the accused's claim that trial counsel and the law officer committed prejudicial error by misstating the legal standards of the defense of mistake.

Testifying in his own behalf, the accused said that at all times he "thought" he had maintained sufficient funds on deposit to pay for the checks drawn on his account. He further testified he never "did receive any [checks] back," from the payees and since he deposited money in the bank "practically every other day . . . [he] knew . . . [he] had money" to cover the checks he had drawn. He kept "track" of his checks, but did not check on those written by his wife to whom he had given authority to draw on his account. Referring to this testimony in his closing arguments, trial counsel said:

"Gentlemen, in regard again to the checks. The law officer will in-struct you on the law. But I want you to note very carefully that, a *mistake on your bank balance, to be a defense to these charges, has to be honest and reasonable.* Any accused that walks in this courtroom may be the most stupid man on earth but he's got to be a reasonable man. He's got to make an honest mistake and as far as his checking account is concerned he's got to make a reasonable mistake." [Emphasis supplied.]

No objection was raised to trial counsel's statement by either individual defense counsel or appointed military defense counsel. Later, the law officer instructed the court on the applicable principles of law. Again, no objection or request for clarification was presented by the defense. However, the accused now contends that the underscored part of trial counsel's argument is an erroneous statement of the law; he also contends the error was "repeated and reinforced" by the law officer in his instructions to the court-martial. See United States v Adams, 5 USCMA 563, 570, 18 CMR 187. The particular instructions bearing on the issue are as follows:

"The defense has introduced evidence to show that at the time of each alleged offense of making and uttering a check and thereafter wrongfully and dishonorably failing to maintain sufficient funds in the bank for payment thereof, the accused was under the mistaken belief that his bank balance was sufficient to pay each respective check. *With respect to this evidence, the court is advised that if the accused was laboring under such mistake and if his mistake was honest and reasonable,* he cannot be convicted of these offenses, for it is essential to a conviction for this offense that the pros-

**143**

ecution prove beyond a reasonable doubt that the accused had actual or constructive knowledge of a balance of his bank account and that he dishonorably failed to maintain a sufficient balance in the bank for payment of the checks upon their presentment for payment.

"The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt, *consequently, unless you are satisfied beyond a reasonable doubt that the accused was not honestly and reasonably under the mistaken belief that his bank balance was sufficient to pay the checks upon presentment, and likewise satisfied beyond a reasonable doubt that his mistaken belief was the result of gross indifference on his part, you must acquit the accused.*

"The term 'utter' as used in these specifications means to hand over, transfer, or deliver a check by any means with the representation by words or by actions that the check will be paid when presented for payment in due course.

"The term 'dishonorably' as used in these specifications imports that the failure of the accused to maintain sufficient funds in the Planter's Bank and Trust Company for payment of each respective check upon its presentment for payment was characterized by fraud, deceit, willful evasion, bad faith, gross indifference or false promise. A mere negligent failure to maintain sufficient funds in a bank for payment of checks drawn thereon is not an offense punishable under the Uniform Code of Military Justice." [Emphasis supplied.]

Appellate defense counsel maintain that on the basis of the trial counsel's argument and the law officer's instructions the court-martial was allowed to return a verdict of guilty, if it found the accused's belief that there were adequate funds in the bank to pay the checks on presentment to be the result of simple negligence. A showing of simple negligence, counsel point out, is not legally sufficient to establish "dishonor" in a bad check charge. United States v Kirksey, 6 USCMA 556, 20 CMR 272; United States v Downard, 6 USCMA 538, 20 CMR 254. Thus, they contend the court-martial was allowed to convict the accused upon an erroneous standard of proof. United States v Connell, 7 USCMA 228, 22 CMR 18. The difficulty with appellant's argument is that it disregards the meaning given by the law officer to the phrase "honest and reasonable."

A particular act is unreasonable, if it fails to meet the norms of conduct of a reasonable person, in circumstances like those surrounding the one charged with the act. Carelessness or negligence, whether it is simple or gross, is measured by this objective standard. Thus, a negligent act may be described as "unreasonable," but the description alone does not indicate whether the negligence is simple or gross. See United States v Stratton, 11 USCMA 152, 28 CMR 376. Since dishonor in a bad check charge requires a showing of gross indifference or gross negligence, not merely simple negligence, it is misleading to suggest that the defense of a belief as to the existence of adequate funds must be both honest and reasonable. Used alone, the phrase "honest and reasonable" tends to suggest that mere carelessness on the part of the accused in not keeping informed of his bank balance is sufficient to justify a finding of guilty. See United States v Bergen, 6 USCMA 601, 608, 20 CMR 317. The phrase, however, was not used alone in the challenged instructions.

The law officer specifically instructed the court that before it could find the accused's belief was unreasonable it had to find beyond a reasonable doubt that his "belief was the result of gross indifference on his part." This clarification of the standard of reasonableness distinguishes the present instruction from that in United States v Connell, supra, which is relied upon by the accused. There, the law officer told the court-martial that the ac-

144

cused's belief was not reasonable if "it was the result of carelessness or fault" on his part. This definition of "reasonable" is patently wrong. While there were other proper instructions on the degree of carelessness constituting "dishonor," there was no correction of the erroneous instruction. We concluded, therefore, there was a fair risk that the court-martial was confused as to the proper standard upon which to predicate a finding of guilty. See also United States v Alberico, 7 USCMA 757, 23 CMR 221. No similar risk is present in this case. Considered as a whole, the instruction is not misleading. The law officer specifically narrowed the scope of the phrase to accord with the requirements of proof of the offense charged. We had a somewhat similar situation before us in the *Bergen* case, supra. What we said there may be appropriately repeated here.

". . . These instructions invite comparison with those in United States v Lampkins, 4 USCMA 31, 15 CMR 31, and in United States v Greenwood, supra. The Greenwood decision does not set out the erroneous instructions at length, but in an important particular it is almost identical with that which appears in our opinion in the Lampkins case. In each of those cases, the law officer stressed the existence of negligence as a permissible basis for conviction. He specifically advised the court in both that if the accused's ignorance or mistake was 'the result of carelessness or fault' on the part of the accused, it was not a defense. No such accent appears here.

"Both before and after the reference to reasonableness, the law officer emphasized the fact that the court must find actual knowledge on the part of the accused of the presence of the stimulant in Fineberg's drink. At no other point in the instructions is there even a suggestion that the court could return a finding of guilt upon constructive knowledge based upon the accused's negligence. In our opinion, therefore, the law

officer's erroneous reference to the reasonableness of the accused's ignorance did not mislead the court. Reasonably considered, it was 'technically incorrect,' but not prejudicial."

The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur.

Again we are faced with an asserted error in instructions by the law officer without defense counsel, either civilian or military, taking any exceptions at the time they were given. In that situation, we ought not to notice the error unless it would result in a miscarriage of justice. Certainly, that conclusion could not be reached on this record. However, my brothers have disagreed on the prejudicial effect of the instructions and I, therefore, express briefly my reasons for concurring with the Chief Judge.

The affirmed findings of guilty involve twenty-three specifications, and accused's issuance of worthless checks covered a period of some nine months. Specifically, he stands convicted for making and uttering eleven checks during that period in the amount of $458.22 and wrongfully and dishonorably failing to maintain sufficient funds to pay them upon presentment for payment. The findings on the other twelve offenses of dishonorably failing to pay debts are not in question, and patently they would sustain the present sentence.

The law officer instructed on each worthless check specification separately, and on each occasion the court-martial was informed that it must find the accused wrongfully and dishonorably failed to maintain funds to cover the specific check. He then defined the term "dishonorably" as follows:

"The term 'dishonorably' as used in these specifications imports that the failure of the accused to maintain sufficient funds in the Planter's Bank and Trust Company for payment of each respective check upon its presentment for payment was

characterized by fraud, deceit, willful evasion, bad faith, gross indifference or false promise. A mere negligent failure to maintain sufficient funds in a bank for payment of checks drawn thereon is not an offense punishable under the Uniform Code of Military Justice."

The law officer also gave separate instructions on each bad debt count, together with an almost identical definition of the term dishonorably as there involved.

It is often possible to segregate a particular instruction from the entire charge and, by isolating and considering it alone, make defensible arguments that one part is erroneous. But the uniform rule is that instructions should be considered as a whole and if in their totality there is no fair risk that the court would be misled as to the requisite findings for guilt, then reversal is not required.

In reading these instructions, I find that by repetition the word dishonorably stands out so boldly in the very lengthy Charge that it would be the beacon light to guide the court. To make a finding of dishonorable conduct, the court was bound to find behavior more reprehensible than ordinary negligence. Furthermore, there are two positive statements made by the law officer which, as the Chief Judge states, so limit the word reasonable that there is no fair risk .it was interpreted improperly. First, the court-martial was informed that unless the members were satisfied beyond a reasonable doubt that accused's alleged mistaken belief was a result of gross indifference on his part, they must acquit him. Second, they were told that a mere negligent failure to maintain sufficient funds in a bank for payment of checks was not an offense under the Code.

With those limits marked out clearly for the court, the members could not find this accused guilty beond a reasonable doubt unless they believed his failure to maintain a balance was characterized by fraud, deceit, willful evasion, bad faith, gross indifference, or false promises, and that his mistaken belief, if any, was the result of gross indifference and not mere failure to act in accordance with reason. Being hedged in by these positive proscriptions and being required to find some degree of criminality equal to or greater than gross indifference precludes any possibility that the verdict could have been returned by the court without a finding of the criminal intent necessary to support a finding of guilty of the alleged offenses.

Finally, defense counsel were furnished a copy and read the law officer's proposed instructions prior to the time they were given. They made several suggestions and had previously submitted theories of their own. They are charged with some responsibility and if clarification was necessary to fit each instruction into a well-knit charge, then there was a duty on their part to make an appropriate request. I can only conclude from their prior knowledge of the charge and their affirmative statements before and after the instructions were given that they desired no further amplification, and that they were satisfied the charge was fair, proper, and not confusing.

FERGUSON, Judge (dissenting):

I dissent.

The single question before us in this case is whether trial counsel's argument and the law officer's instructions on the affirmative defense of mistake of fact were prejudicially erroneous. All parties agree the evidence raises an issue with respect to the accused's honest belief concerning the state of his checking account, but the author of the principal opinion apparently finds the instructions, as a whole, correctly delineated the matter for the members of the court-martial. With this conclusion, I must respectfully disagree.

The accused was found guilty of numerous specifications of dishonorable failure to maintain sufficient funds on deposit to pay checks which he had previously made and uttered and dishonorable failure to pay various debts, all in violation of Uniform Code of Military Justice, Article 134,

146

10 USC § 934. The matter before us involves only the worthless check offenses.

At the conclusion of the trial, an out-of-court hearing was held in which the question of instructions was discussed. The law officer indicated his determination to advise the court-martial concerning the defense of mistake and informed counsel that all of the instructions "are standard out of this book . . . the law officer's pamphlet." Thereafter, the hearing was ended and proceedings in open court were resumed. In his closing argument to the court-martial, trial counsel adverted to the defense of mistake in the following language:

"Gentlemen, in regard again to the checks. The law officer will instruct you on the law. But I want you to note very carefully that, a mistake on your bank balance, to be a defense to these charges, *has to be honest and reasonable.* Any accused that walks in this courtroom may be the most stupid man on earth *but he's got to be a reasonable man.* He's got to make an honest mistake and as far as his checking account is concerned *he's got to make a reasonable mistake.* I'll ask each member of this court, how many of you write 10 to 15 checks and never check your balance? *Is that reasonable?"* [Emphasis supplied.]

The law officer's instructions followed. They are extensive, occupying thirteen pages of the record. His advice with regard to the defense of mistake is as follows:

"The defense has introduced evidence to show that at the time of each alleged offense of making and uttering a check and thereafter wrongfully and dishonorably failing to maintain sufficient funds in the bank for payment thereof, the accused was under the mistaken belief that his bank balance was sufficient to pay each respective check. With respect to this evidence, the court is advised that if the accused was laboring under such mistake *and if his mistake was honest and reasonable,* he cannot be convicted of these offenses, for it is essential to a conviction for this offense that the prosecution prove beyond a reasonable doubt that the accused *had actual or constructive knowledge of the balance of his bank account* and that he dishonorably failed to maintain a sufficient balance in the bank for payment of the checks upon their presentment for payment.

"The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt, *consequently, unless you are satisfied beyond a reasonable doubt that the accused was not honestly and reasonably under the mistaken belief that his bank balance was sufficient to pay the checks upon presentment, and likewise satisfied beyond a reasonable doubt that his mistaken belief was the result of gross indifference on his part, you must acquit the accused.*

"The term 'utter' as used in these specifications means to hand over, transfer, or deliver a check by any means with the representation by words or by actions that the check will be paid when presented for payment in due course.

"The term 'dishonorably' as used in these specifications imports that the failure of the accused to maintain sufficient funds in the Planter's Bank and Trust Company for payment of each respective check upon its presentment for payment was characterized by fraud, deceit, willful evasion, bad faith, gross indifference or false promise. *A mere negligent failure to maintain sufficient funds in a bank for payment of checks drawn thereon is not an offense punishable under the Uniform Code of Military Justice."*[1] [Emphasis supplied.]

---

[1] It is to be noted that the instructions also contain another infirmity in that they permit accused's guilt to be predicated upon "constructive knowledge" of the deficient balance in his account. United States v Curtin, 9 USCMA 427, 26 CMR 207; United States v Walters, 10 USCMA 598, 28

In United States v Kirksey, 6 USCMA 556, 20 CMR 272, a unanimous Court traced the development of bad check offenses in military law and concluded that a mere negligent failure to maintain a proper account balance did not constitute criminal misconduct. Rather, it was held that the element of dishonor involved in the failure to maintain sufficient funds on deposit required a demonstration of willful evasion, bad faith, fraud, or gross indifference. United States v Downard, 6 USCMA 538, 20 CMR 254; United States v Kirksey, supra; United States v Brand, 10 USCMA 437, 28 CMR 3; United States v Groom, 12 USCMA 11, 30 CMR 11. The antithesis of this proposition is, of course, that an honest and not grossly indifferent, rather than an honest and reasonable, mistake is sufficient to exculpate an accused from criminal responsibility for a failure to maintain his checking account properly. Thus, in United States v Downard, supra, we condemned an instruction permitting an accused to escape conviction only if his mistaken belief " 'was not the result of such negligence, indifference, or irresponsibility as is sufficient to bring discredit upon the armed forces.' " United States v Downard, supra, at page 540. And in United States v Connell, 7 USCMA 228, 22 CMR 18, a unanimous Court, speaking through the Chief Judge, unhesitatingly reversed the accused's conviction when it appeared that the law officer required accused's mistaken belief to be " 'honest and reasonable under the circumstances' " in order to constitute a defense against charges identical to those tried here.

Examination both of the trial counsel's final argument, in which he directed the members' attention to the law officer's forthcoming advice and emphasized the supposed requirement that accused's mistake be reasonable, and the instructions finally given establish conclusively that the members were repeatedly informed of the standard which we found erroneous in CMR 164; United States v Nix, 11 USCMA 691, 29 CMR 507. As I believe reversal is required on the basis of the

United States v Connell and United States v Downard, both supra. Thus, it would appear that reversal is required here.

The Chief Judge, however, points to the concluding paragraph of the law officer's advice and distinguishes our prior holdings on the basis that the court-martial was effectively informed it could not predicate findings of guilty upon accused's negligence alone and, in essence, the term "honest and reasonable" was actually defined as meaning honest and not grossly indifferent.

I suggest that a reading of the instruction quoted, supra, reveals the fallacy inherent in this reasoning. Rather than define "honest and reasonable," the law officer proceeded to set forth in separate paragraphs of his instructions two distinct standards by which accused's conduct was to be measured. Initially, he stated that the mistake must be reasonable. Subsequently, he informed the court-martial that it must not result from gross indifference. Indeed, if the advice be taken as a whole, it would appear that, at best, the court was told that a grossly indifferent mistake was simply one which was unreasonable. In short, if the instructions are indivisibly construed, the law officers defined gross indifference in terms of reasonable conduct rather than the reverse. And, in view of the trial counsel's vehement argument along the same line, I cannot believe that the members applied any standard other than the one which we forbade in United States v Connell, supra.

I offer the foregoing analysis of the questioned instruction merely to demonstrate the lack of any real support for the distinction drawn between this cause and our prior cases. More basically, however, I believe the author of the principal opinion overlooks the fact that the instruction does no more than to set forth two mutually inconsistent standards by which accused's guilt was to be measured. On the one hand, the law officer and the trial granted issue alone, however, it is not necessary further to discuss this additional matter.

counsel dwelt upon the necessity for accused's mistake to be both honest and reasonable. Later, and almost as an afterthought, the law officer alone extended the proper measure, i.e., that the mistake need be only honest and not the result of gross indifference. In such situations, we have uniformly heretofore held that reversal is required. Thus, in United States v Noe, 7 USCMA 408, 22 CMR 198, we stated, at page 410:

". . . The law is well settled that the 'instruction as a whole' test is inapplicable where the court has been instructed both rightly and wrongly on a material issue. The correct instruction does not cancel out the prejudicial taint of the erroneous one. If two instructions are in direct conflict and one is clearly prejudicial the rule of the correct instruction as a whole does not apply."

See also, to the same effect, United States v Morphis, 7 USCMA 748, 23 CMR 212, and United States v Alberico, 7 USCMA 757, 23 CMR 221.

Finally, I point out that United States v Holloway, 10 USCMA 595, 28 CMR 161, presented an instructional situation almost identical to that now before us. There, the accused was charged with wrongful possession of marihuana. The defense of honest ignorance of such possession was raised by the evidence. In advising the court of the effect of such ignorance, the law officer initially and properly required only that the lack of knowledge be honest. However, in concluding his instructions, he stated that the accused's ignorance must not only be honest but also must not result from gross indifference. In reversing, we rejected the Government's contention that the advice, read as a whole, was proper, and held that, as two inconsistent standards were set forth therein, prejudice was apparent. I suggest that the same result should be reached here.

In sum, then, I believe the only fair construction which can be given to the law officer's advice, particularly in light of the trial counsel's argument, is either that the accused was erroneously required to show his mistake was both honest and reasonable or that two inconsistent standards were set forth therein. Under either view, prejudicial error was committed and the pertinent findings of guilty should be set aside.

I would reverse the decision of the board of review and return the record of trial to The Judge Advocate General of the Army with instructions that the board either order a rehearing on the bad check offenses and the sentence or reassess the penalty on the remaining findings of guilty.