UNITED STATES, Appellee,

v.

Sam T. WATKINS, Staff Sergeant
U.S. Air Force, Appellant.

No. 49,205.
ACM 23855.

U.S. Court of Military Appeals.

Jan. 27, 1986.

For Appellant: *Captain John V. Sullivan*, USAFR (argued); *Colonel Leo L. Sergi* and *Captain Timothy J. Malloy* (on brief).

For Appellee: *Major Robert E. Ferencik, Jr.* (argued); *Colonel Kenneth R. Rengert* (on brief).

*Opinion*

COX, Judge.

Appellant was tried by general court-martial in November 1982 at Spangdahlem Air Base, Germany. Contrary to his pleas, he was found guilty of burglary with intent to commit rape, assault consummated by a battery, forcible sodomy, and rape, in violation of Articles 129, 128, 125, and 120 of the Uniform Code of Military Justice, 10 U.S.C. §§ 929, 928, 925, and 920, respectively. The members sentenced him to a dishonorable discharge, 16 years' confinement at hard labor, total forfeitures, and reduction to the lowest enlisted pay grade. The convening authority approved this sentence and the Court of Military Review affirmed all except confinement in excess of 14 years. 17 M.J. 783.

This Court granted review on the following issue raised by appellate defense counsel:

WHETHER THE ACCUSATORY CROSS EXAMINATION OF THE APPELLANT CONCERNING IRRELEVANT EXTRINSIC OFFENSES DEPRIVED HIM OF A FAIR TRIAL.

We also specified the following issue for review, but did not ask for briefs:

WHETHER THE SPECIFICATION OF ADDITIONAL CHARGE I (ASSAULT CONSUMMATED BY A BATTERY) IS MULTIPLICIOUS FOR FINDINGS WITH THE SPECIFICATION OF CHARGE I (RAPE).

After due consideration of both these issues, we affirm.

In its opinion, the Court of Military Review described the posture of the evidence in this case concerning the granted issue, stating:

Some of the facts are not in dispute. The victim and the accused, who were casual acquaintances, had socialized on the evening in question. The accused drove the victim home, and she invited him into her apartment. There had been no sexual advances made prior to that time.

The parties disagreed as to what happened in the apartment and who was the aggressor. The accused claims that he drove the victim home because she was intoxicated and couldn't drive. He believed that the victim's husband was home and he would drive the husband to retrieve the couple's automobile, which was parked outside one of the bars downtown. When he got into the apartment the victim told him that her husband was not at home, and asked him to smoke some hashish with her. He refused and tried to leave but the victim threatened to scream "rape." The victim gave him a drink and asked him to have sexual relations with her. The victim persisted but he feigned being tired, after which both he and she fell asleep.

In contrast, the victim testified that the accused asked her for a drink, and after she gave him one, he demanded another. She became alarmed and asked him to leave the apartment; he would not. She tricked the accused into going out of the apartment; however, he forced the door open and reentered. The accused slapped her on the face, choked her and threatened her. He forced her to commit fellatio and then he raped her. He fell asleep, and she ran away and called the police, who arrested the accused at the scene.

There was some corroboration of the victim's version of the facts; however, in essence, the issue at trial was which one of the parties was more believable. With

this posture of evidence, any factor which could unlawfully influence the triers of fact would be all damning.

17 M.J. at 785.

In footnote 2 of its opinion, the court below also delineated the seven acts of misconduct purportedly committed by appellant to which trial counsel specifically referred in his cross-examination questions, as follows:

1975—while drunk, burn the clothes of Ms. Elizabeth B.

1 January 1981—while drunk, slap Airman Basic Denise W.

1 January 1981—while drunk, slap Staff Sergeant Juanita S.

6 April 1981—while drunk, strike Airman First Class JoEllen C.

September 1981—while drunk, assault his wife

18 September 1981—while drunk, assault his wife

18 September 1981—while drunk, attempt to strike Private First Class Pauline P.

17 M.J. at 785. Trial defense counsel objected to questions on these incidents on the basis of Mil.R.Evid. 404(b). The military judge overruled his objections. Appellant denied that these acts had occurred but indicated that he had been falsely accused of them.

In his closing instructions to the court members prior to findings, the military judge stated:

Let me tell you that yesterday I allowed the examination of Staff Sergeant Watkins by the trial counsel concerning questions about other acts involving violence and intoxication and correlation. Now, you will recall that the accused denied those acts. So that there is no evidence that such acts occurred. You may draw no inference that the acts occurred or did not occur, and you may draw no inference that they did occur by my allowing the questions to be put to him. You may, additionally, draw no inference that he must have been involved or they would not have been asked ... or anything like that. All right. They were merely allowed to be put to him in an effort for the prosecution to show a plan or a design going to this kind of relationship between alcohol and violence. Any questions about that?

Negative responses.

Neither counsel mentioned these matters in closing argument.

I

■ The Court of Military Review determined that the challenged questions were not authorized under Mil.R.Evid. 404(b) for the purposes stated by the trial judge in the record of trial.[1] It concluded, however, that such error did not prejudice appellant because he had denied the other offenses, the prosecution had not introduced any extrinsic evidence of the offenses, and the trial judge had given appropriate limiting instructions. We conclude that the lower court's holding of harmless error was justified for the reasons stated above. Moreover, the challenged questions were authorized under Mil.R.Evid. 404(b) for several purposes advanced by trial counsel which, for some inexplicable reason, were ignored by the trial judge and the Court of Military Review.[2] In this con-

---

1. The purported acts of misconduct were not shown by the Government to be admissible for the purpose of establishing a plan, design, *modus operandi*, or course of conduct. *See United States v. Brannan,* 18 M.J. 181 (C.M.A.1984). Only two of these acts were alleged to have been done for the common purpose of obtaining sex, and a concurrence of common features was not otherwise apparent in the proffer of evidence. The acts averred also were not so unusual or distinctive to be like a signature. *Id.*

2. No evidence was admitted at this trial for the limited but erroneous purpose relied on by the military judge. Accordingly, consideration of other grounds justifying these questions does not undermine in any way the holding of this Court in *United States v. Rener,* 17 U.S.C.M.A. 65, 70, 37 C.M.R. 329, 334 (1967). It is still this Court's position that "[a] trial becomes unfair if evidence accepted for one purpose may be used by an appellate court as though admitted for a different purpose, unavowed and unsuspected." *Id.* at 70, 37 C.M.R. at 334. *See Shepard v.*

text, the above-noted error in the trial judge's reasoning clearly was harmless beyond a reasonable doubt.

■ Trial counsel initially justified these questions on the basis that the prior acts of misconduct would show appellant's motive for committing the charged acts. Mil.R. Evid. 404(b). Evidence of motive is relevant within the meaning of Mil.R.Evid. 401 to show the doing of an act by a person as an outlet for that emotion. *See generally* 1A Wigmore, *Evidence* § 117 (Tillers rev. 1983). However, the prior acts of conduct must be the type which reasonably could be viewed as "the expression and effect of the existing internal emotion." *Id.* at 1696. Moreover, this same motive must be shown to have existed in appellant at the time of the subsequently charged acts. *See generally* 2 Wigmore, *Evidence* § 395 (Chadbourn rev. 1979).

■ The prior acts referred to by trial counsel all involved the use of physical violence against different women while appellant was under the influence of alcohol. Such conduct, repeated on numerous occasions, reasonably reflects hostile feelings on the part of appellant towards women. *See State v. Abercrombie,* 375 So.2d 1170 (La.1979); *see also Thiede v. Utah,* 159 U.S. 510, 16 S.Ct. 62, 40 L.Ed. 237 (1895), and 2 Wigmore, *supra,* §§ 396 and 397. The closeness in time of the previous acts to those charged here and the common fact of appellant's intoxication suggest further that this hostile feeling towards women also existed in appellant at the time of the charged offenses, i.e., April 19, 1982. Accordingly, a proper foundation for these questions existed under Mil.R.Evid. 404(b) to show appellant's motive in committing the charged acts.

■ Another purpose under Mil.R.Evid. 404(b) for which trial counsel offered this evidence of prior misconduct by appellant was to show appellant's intent in engaging in the charged conduct on the night in question. *See United States v. Brannan,* 18 M.J. 181, 184–85 (C.M.A.1984). *See generally* 2 Wigmore, *supra,* § 242. The Government properly argued that repeated acts of violence towards different women indicated a deliberate state of mind consistent with the criminal intent required for the charged offenses. *See United States v. Fountain,* 768 F.2d 790, 796 (7th Cir. 1985); *United States v. Dise,* 763 F.2d 586, 592–93 (3d Cir.1985). *See also United States v. Corbin,* 734 F.2d 643 (11th Cir. 1984). Such a state of mind also rebutted appellant's testimonial assertion that he did not have such a state of mind on the night in question. *See United States v. Link,* 728 F.2d 1170 (8th Cir.1984).

II

■ The second issue in this case was specified by this Court on the basis of *United States v. Glover,* 16 M.J. 397 (C.M. A.1983). Review of the evidence in this case reveals that the particular acts of violence alleged in the assault specification occurred after appellant broke into the apartment but before he forced the victim to engage in any sexual acts. These acts of choking and striking the victim's face were not particularly alleged in any of the other specifications, and the evidence does not show they constituted the actual force used to accomplish the above sexual crimes. The findings of guilty to the assault specification may stand. *See United States v. Baker,* 14 M.J. 361, 368 (C.M.A. 1983).

The decision of the United States Air Force Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring in the result).

This appeal concerns the cross-examination of appellant as to seven incidents of misconduct. Under the Military Rules of Evidence, a witness "may, ... in the discretion of the military judge," be cross-examined about misconduct which tends to prove his untruthfulness. Mil.R.Evid. 608(b). In this regard, no distinction is made between

*United States,* 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933); *United States v. Kaplan,* 510 F.2d 606

(2d Cir.1974). *Cf. United States v. Rosenstein,* 474 F.2d 705, 710–711 (2d Cir.1973).

the "accused and other witnesses." Drafters' Analysis, Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition).* However, Mil.R.Evid. 403 still applies, so that a cross-examiner is not allowed to ask a question seeking to elicit information which, although relevant to the accused's credibility, would be unduly prejudicial. Even though a military judge has great discretion concerning the scope of cross-examination, I doubt that the questions asked Watkins would be justified as proper cross-examination because they had little, if any, tendency to impeach his credibility, and they had great potential for prejudice.

In any event, when he allowed the question, the judge used a rationale which relied on Mil.R.Evid. 404(b). According to the judge, appellant's answers might evidence "the likelihood that the accused, on this particular night, behaved in the way as he has behaved in the past concerning the course of conduct or a plan in his interplay with a woman in this kind of a relationship."

In rejecting this rationale, the Court of Military Review observed:

> We conclude that the military judge erroneously applied the principles of Mil. R. Evid. 404(b). From the judge's own pronouncement, it is clear that the evidence was introduced to show that the accused possesses a certain type of character and reacts with violence towards women when he is drunk. This is precisely the situation that is meant to be prohibited by the rule. Calling such evidence a course of conduct, plan, design or *modus operandi* will not change that result.

Further, the proffered evidence was not relevant since the past and present offenses were not "strikingly similar." *United States v. Oliphant*, 525 F.2d 505 (9th Cir.1975), *cert. denied*, 424 U.S. 972, 96 S.Ct. 1473, 47 L.Ed.2d 740 (1976); or "dramatically similar," *United States v. Bailleaux*, 685 F.2d 1105 (9th Cir.1982), so as to indicate *modus operandi.*

17 M.J. 783, 785–86. I fully agree.

I also agree with the court below in this evaluation of the effects of the judge's error:

> Although the questioning of the accused on these extrinsic offenses was error, we find that he was not prejudiced thereby. In each instance, the accused denied that he had committed the extrinsic offenses, and when the prosecution was unable to offer any evidence that he had committed them, the military judge gave an appropriate limiting instruction, which, when read in its entirety, properly stated the law with sufficient clarity to be understood by the court members. *United States v. Hatchett*, 2 U.S.C.M.A. 482, 9 C.M.R. 112 (1953); *United States v. Smith*, 8 U.S.C.M.A. 582, 25 C.M.R. 86 (1958).

17 M.J. at 786 (footnote omitted).

Accordingly, I join in affirming the decision of the United States Air Force Court of Military Review.

---

* The provisions of the Manual for Courts-Martial, United States, 1969 (Revised edition), in effect prior to September 1, 1980, did make such a distinction. *See* paras. 153*b* and 138*g*, Manual, *supra. But cf.* paras. 153*b*, 149*b* (1), and 138*g*, Manual for Courts-Martial, United States, 1951, which seem to draw no such distinction.