**UNITED STATES of America, Appellee,**

v.

**James Scott CALHOUN, Appellant.**

**No. 83–5141.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 9, 1983.

Decided Jan. 30, 1984.

Rehearing Denied March 6, 1984.

W.A. Thornhill, III, Beckley, W.Va. (Thornhill, Kennedy & Vaughan, John C. Ashworth, Ashworth & Ashworth, Beckley, W.Va., on brief), for appellant.

Frank D. Allen, Jr., Washington, D.C. (Brian K. Landsberg, Dept. of Justice, David A. Faber, U.S. Atty., Wm. Bradford Reynolds, Asst. Atty. Gen., Charleston, W.Va., on brief), for appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and MICHAEL\*, District Judge.

MURNAGHAN, Circuit Judge:

James Scott Calhoun, a deputy sheriff, allegedly wielding a flashlight, several times struck Kenneth Hebb, who was under arrest and handcuffed. Hebb died as a consequence of a blow or blows. A prosecution ensued under 18 U.S.C. § 242 for deprivation by Calhoun of the rights of Hebb.

Two improprieties pointed to by Calhoun in the manner in which the trial was conducted were in our judgment each sufficient to require reversal of the judgment of conviction and the remand for a new trial.

■ The law establishes, of course, that a prosecution for deprivation of rights does not depend upon death or serious physical injury to the victim. The penalty is subject to enhancement if death results, but that does not concern guilt or innocence of the crime. Had Kenneth Hebb, having been unlawfully mistreated by Calhoun lived, and even if he had suffered no apparent physical injury, nevertheless, a violation of 18 U.S.C. § 242 might have occurred if the striking were unwarranted and with the intent to deprive Hebb of a constitutional right (here freedom from excessive and unreasonable force applied by a deputy sheriff, the representative of the state).[1] On the basis of that rule of law, objections were sustained by the district judge to questions put to Calhoun by counsel representing him when he testified in his own defense as to whether he intended to kill or seriously to injure Kenneth Hebb.

■ The difficulty with that approach lies in the fact that for 18 U.S.C. § 242 purposes it is necessary to determine whether the striking was unwarranted. The jury had to

> look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and *whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.*

*King v. Blankenship,* 636 F.2d 70, 72 (4th Cir.1980), *citing Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (emphasis added). The absence of an intent to kill or seriously to injure Hebb was relevant to whether Calhoun's actions were carried out in a good faith effort or not. The district court erred when it excluded the relevant evidence bearing on good faith. To put the matter otherwise, the act by Calhoun had to be done "willfully" to amount to an infraction

\* The Honorable James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation.

1. For that reason, the additional claim by Calhoun that the evidence failed to support a finding that there was a violation of 18 U.S.C. § 242 fails. The jury might, on the evidence before it, permissibly have concluded that repeated blows, where Hebb had been immobilized through being handcuffed with his hands behind his back and placed in the rear seat of a police car, were unjustified. *E.g., King v. Blankenship,* 636 F.2d 70, 72 (4th Cir.1980).

of 18 U.S.C. § 242.[2] The questions his counsel was not allowed to ask served as an introduction to a determination of what Calhoun's intent was. They were, consequently, relevant and should have been allowed.

■ Any argument that the error was harmless, on the ground that the jury must have appreciated that the answers to the two questions would have been in the negative, does not favorably impress us. Such an approach would diminish greatly the benefits to be derived from taking the stand in one's own defense.

Second, during the cross examination of Calhoun, the Assistant United States Attorney, J. Timothy DiPiero, sharply struck the counsel table with a flashlight, similar to the one with which Calhoun allegedly struck Hebb, emphasizing the seriousness of the blow inflicted on Hebb. The district judge issued a reprimand when he immediately sustained an objection to the prosecutor's act and told him not to do it again. That corrective action normally might well have sufficed to make the thumping insufficient, in and of itself, to merit reversal of a conviction otherwise properly arrived at. However, special factors heighten the significance of the particular wrongful thumping with which we are here concerned.

■ The nature of the force used by the defendant was the only real issue. Involved was a prosecution, not for murder or manslaughter, but for depriving a person of his civil rights under color of state law. It was undisputed that the defendant struck Hebb and that Hebb's death was, at least in part, caused by the blows delivered by the defendant. As the Supreme Court said in *Screws v. United States,* 325 U.S. 91, 108–09, 65 S.Ct. 1031, 1038–39, 89 L.Ed. 1495 (1945):

> The fact that a prisoner is assaulted, injured or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States.

Whether the defendant used unjustified force against Hebb was the relevant issue. *See King v. Blankenship, supra.* The thumping with the flashlight was such a graphic act that it, with a high degree of probability, influenced the jury on the central issue in the case.

Moreover, there can be no doubt that the prosecutor's improper act was calculated and deliberate. A very similar incident had earlier occurred and been identified as improper in the case of *United States v. Golden,* 671 F.2d 369, 372 (10th Cir.1982).[3] DiPiero, the perpetrator of the thumping in the instant case, was well aware of the *Golden* case prior to trial. *Golden* was cited twice in the prosecution's proposed jury instructions, which were filed with the district court a week prior to trial. Although the conduct of trial counsel is largely within the discretionary supervision of the district judge, a deliberate—as contradistinguished from inadvertent—act which, in all likelihood, prejudiced the defense may not be excused on those grounds.[4] The prosecutors should keep in mind, generally and

---

**2.** Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . .
18 U.S.C. § 242.

**3.** There the flashlight thumping was described as "improper conduct" and an objection to the prosecutorial misbehavior was sustained. Reversal of the conviction was not deemed to be required, however, probably because the thumping was thought to be inadvertent, and not a calculated invasion of the defendant's rights. "Fighting fire with fire," however, is not an acceptable approach by an Assistant United States Attorney in a prosecution for deprivation of rights.

**4.** We note that our reversal is based, not solely on our supervisory power over the officers of the courts within our jurisdiction, but on the actual prejudice suffered by the defendant. The prosecutor's conduct here cannot be dismissed as harmless. *Cf. United States v. Hasting,* —— U.S. ——, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (a reversal by a court of appeals for prosecutorial misconduct was overturned where the error was harmless).

during the retrial of this particular case, that:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (per Sutherland, J.). DiPiero's was, in this instance, a foul blow.

REVERSED AND REMANDED FOR A NEW TRIAL.