**UNITED STATES of America**

v.

**Hastings J. DISE, Appellant.**

No. 84–1451.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
May 2, 1985.

Decided June 7, 1985.

Rehearing and Rehearing En Banc
Denied July 18, 1985.

William J. Honig, Norristown, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Barbara J. Cohan-Duffy, Asst. U.S. Atty., Frank D. Allen, Jr., Atty., Civil Rights Div., U.S. Dept. of Justice, Philadelphia, Pa., for appellee.

Before GIBBONS and HIGGINBOTHAM, Circuit Judges, and SAROKIN, District Judge *.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Hastings J. Dise appeals from a judgment of sentence imposed following his conviction on seven counts of violating 18 U.S.C. § 242 (1982) by depriving inmates of Pennhurst State Hospital of their federally protected right to personal security. He contends that there is insufficient evidence to support the conviction on any count; that the court erred in instructing the jury; that the court erred in admitting evidence of other crimes; and that his motion to dismiss the indictment should have been granted. We affirm.

---

* Hon. H. Lee Sarokin, United States District Judge for the District of New Jersey, sitting by designation.

## I.

### Sufficiency of the Evidence

Pennhurst is a Pennsylvania state institution for the severely mentally retarded. Dise worked there as an aide. During 1982, as a result of reports of abuse of inmates, Pennsylvania State Trooper Joanne D'Agostino became an undercover aide at the institution. As a result of her testimony before a grand jury in the Eastern District of Pennsylvania, several Pennhurst employees were indicted, including Dise and Cecil Conrad Snell. Snell pleaded guilty, and at Dise's trial testified for the government, as did Trooper D'Agostino. In evaluating Dise's contention that there is not sufficient evidence to support the jury verdict, we must view the testimony of D'Agostino and Snell in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

From the testimony the jury could have found that under Pennsylvania's regulations governing the care of Pennhurst inmates, aides were permitted to use force on those inmates only to the extent necessary to assure safety or to provide training, but that Dise frequently punched, kicked, kneed, or shoved inmates for no authorized reason. Even where use of force was occasioned by some departure from desirable order, the jury could have found that Dise employed force so out of proportion to the inmates' conduct as to belie an intent merely to maintain discipline or promote safety. There was evidence, moreover, from which the jury could conclude that Dise's actions were motivated, not by safety or disciplinary concerns, but by an intent to humiliate and taunt inmates. The jury could have found that Dise knew his conduct was illegal; this conclusion might have been derived from the evidence that before punching a resident he looked in both directions, from the evidence that he received training as to proper responses to inmate behavior, and from evidence of his admissions about not having been caught for pushing the inmates around.

Dise contends that the foregoing facts, if found, do not support a conviction of violating 18 U.S.C. § 242. He does not dispute that when he battered inmates at Pennhurst he was acting under color of Pennsylvania law. Rather, he contends that the rights of those inmates were so uncertain prior to the decision in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), that as a matter of law he could not have willfully violated them. This contention lacks merit. That very case states plainly that the federally protected interests here involved, personal security and freedom from bodily restraint, have always been protected by the due process clause of the fourteenth amendment. Justice Powell wrote:

Respondent's first two claims involve liberty interests recognized by prior decisions of this Court, interests that involuntary commitment proceedings do not extinguish. The first is a claim to safe conditions. In the past, this Court has noted that the right to personal security constitutes a "historic liberty interest" protected substantively by the Due Process Clause. *Ingraham v. Wright,* 430 U.S. 651, 673 [97 S.Ct. 1401, 1413, 51 L.Ed.2d 711] (1977). And that right is not extinguished by lawful confinement, even for penal purposes. See *Hutto v. Finney,* 437 U.S. 678 [98 S.Ct. 2565, 57 L.Ed.2d 522] (1978). If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions.

Next, respondent claims a right to freedom from bodily restraint. In other contexts, the existence of such an interest is clear in the prior decisions of this Court. Indeed, "[l]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 18 [99 S.Ct. 2100, 2109, 60 L.Ed.2d 668] (1979) (POWELL, J., concurring in part and dissenting in part). This interest survives

criminal conviction and incarceration. Similarly, it must also survive involuntary commitment. 457 U.S. at 315–16, 102 S.Ct. at 2457–58 (footnote omitted). From the evidence the jury certainly could have concluded that Dise, by intentionally battering Pennhurst inmates under color of state law with the knowledge that his acts were unlawful, deprived them of the federally protected liberty interests in personal security and freedom from bodily restraint. The United States is not required to demonstrate that Dise was "thinking in constitutional terms"; rather, a conviction under 18 U.S.C. § 242 may stand if Dise's "aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution." *Screws v. United States*, 325 U.S. 91, 106, 65 S.Ct. 1031, 1037, 89 L.Ed. 1495 (1945). Thus there is no merit in Dise's contention that the verdict is insufficiently supported by the evidence.

## II.

### The Jury Charge

Dise objects to the court's instruction in two respects: that it did not adequately inform the jury as to rights protected by the Constitution, and that it did not adequately inform the jury on the willfulness required for a violation of section 242.

### A.

### The Charge on Deprivation of a Constitutionally Protected Right

■ On the issue of deprivation of a constitutionally protected right, the court instructed:

"Now, the indictment charges as to each count that the client was deprived of a right of liberty without due process of law.

"The right not to be deprived of liberty without due process of law includes the right to be free from unwarranted and unjustified intrusion by a state employee acting under color of law, as I have defined it, upon one's personal security and integrity.

"A person has a constitutional right to be free from excessive, unnecessary and unreasonable force at the hands of state employees who have proper and legal custody over them, over a person.

"If you find from the evidence in this case beyond a reasonable doubt that the defendant physically abused the clients, as described in the counts of the indictment, and that the force used was unreasonable, excessive and unnecessary, then the jury may find that the Government has met its burden of proof on this element of there being a deprivation of liberty and the right of liberty.

"The liberty of the individual which the federal Constitution protects is not absolute and unqualified freedom or privilege to do as one pleases at all times and under all circumstances. It is always subject to reasonable restraints, including such restraints as are imposed by law.

"The Pennhurst clients had a legal right at all times not to be deprived without due process of law, of any liberty, security, or protected by the Constitution.

"The indictment charges that the Pennhurst clients were lawfully confined to Pennhurst at the times and places that the alleged offenses occurred in the indictment.

"Therefore, these clients had obviously been deprived of very substantial rights of liberty, but there is no contention that that was done in any way without due process of law.

"In other words, it was proper that they be confined there, and that their liberty be restricted to the extent that they be required to be confined to an institution.

"Nevertheless, despite the fact that they had had that liberty taken away from them by due process of law, they still retained other liberty rights, among which was the liberty right to be free from unlawful attacks upon the physical integrity of their persons.

"It is the policy of the law to protect the physical integrity of every person from unauthorized violations and interference.

"These clients, even though while lawfully confined at Pennhurst, had the right, under the federal Constitution, not to be deprived of this remaining liberty, and involving physical integrity of their person, without due process of law.

"Now, to be deprived of liberty, without due process of law, means to be deprived of liberty without the authority of the law.

"Before the jury could determine whether or not the clients were deprived of liberty under the federal Constitution without due process of law, the jury must first determine from the evidence in the case whether the accused did any of the acts charged in the indictment, and, if so, whether under the circumstances shown by the evidence, the accused acted within or without the bounds of the lawful authority under state law.

"If the accused acted within the limit of his lawful authority, as a mental retardation aide under state law, then the accused would not have deprived the clients of any liberty without due process of law, since state law applicable in this case has in no way been challenged, and despite due process-of-law requirements of the federal Constitution.

"Now, we, therefore, have to turn briefly to the state law.

"The Commonwealth of Pennsylvania, under whose law or under color of whose law Hastings Dise was allegedly acting, has passed certain statutes.

"There is a Section 509 of the Pennsylvania Crimes Code which provides as to the type of force that may be used toward the person of another, and provides that such force is justifiable if the actor is the guardian or other person similarly responsible for the general care and supervision of an incompetent person, and the force is used for the purpose of safeguarding or promoting the welfare of the incompetent person, including the prevention of his misconduct, or when incompetent person is in an institution for his care and custody, for the maintenance of reasonable discipline in such institution, and the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury and disfigurement, extreme or unnecessary pain, mental distress or humiliation.

"Now, the law of Pennsylvania, therefore, would govern as to that particular requirement of the amendment of force that could be used, and in substance, it simply provides that where a person is in an institution such as these clients, that the force could be used upon them for the purpose of maintaining reasonable discipline in the institution, or where it was done for the safeguarding or promoting of the welfare of such clients, provided the force was not designed to cause or known to create a substantial risk of causing death, serious bodily harm, disfigurement. I don't think there is any evidence as to any of that. Extreme or unnecessary pain, mental distress, or humiliation.

"A mental retardation aide would also be justified in the use of any force which he or she reasonably believed to be necessary to defend him- or herself or another from bodily harm.

"Thus, we are concerned in this case only with excessive, unreasonable and unnecessary force that would cause unnecessary pain, mental distress, or humiliation."

The quoted instruction is consistent with the federal standards for protection of personal security and freedom from restraint to which Justice Powell refers in *Youngberg v. Romeo, supra.* Dise's objections to it are entirely without merit.

### B.

#### The Charge on Willfulness

On the issue of willfulness the court instructed:

"Now, the fourth element has to be established beyond a reasonable doubt—is the element of willfulness.

"I told you that an act is done willfully if it is done voluntarily and intentionally and with a specific intent to do something that the law forbids, that is to say, with a bad purpose to disobey or disregard the law.

"It means, in this case, the specific intent to deprive these Pennhurst clients of liberty without due process of law, as I have defined that to you.

"With regard to specific intent, you are instructed that the intent is the state of mind, and, of course, as I told you, that can be proved by circumstantial evidence, as well as by direct evidence.

"The Government must prove beyond a reasonable doubt that the defendant had the specific intent to deprive the alleged victims, that is, clients, of their constitutional rights in this case, their right not to be deprived of liberty without due process of law.

"However, this does not mean that the Government is required to prove that the defendant was thinking in constitutional terms when he committed the act, nor that he even knew it was a federal constitutional right he was violating, if you find any rights were violated.

"The Government must prove, however, that the defendant intended to commit the acts charged, which acts resulted in a violation of the constitutional rights of the clients.

"In other words, the Government has to prove beyond a reasonable doubt that the defendant used excessive, unreasonable and unnecessary force, as I have defined that to you, and at the time he did it, he knew he was using excessive, unreasonable and unnecessary force beyond that which was permitted to him under the law of the State of Pennsylvania.

"The Government need not prove that the deprivation of the constitutional rights was the predominant purpose of the defendant's actions.

"You may find that the defendant acted with a requisite specific intent, even if you find that he had no real familiarity with the Constitution, or with the particular constitutional rights involved.

"If force used by the defendant was greater than the force that was reasonably necessary, or if you find that no force was necessary, then if you find that there was excessive force, that may be taken into consideration in determining whether or not the defendant had the specific intent, but the specific intent that is required is an intent to utilize excessive, unreasonable and unnecessary force beyond that which would be allowed by state law.

"As I pointed out, this is a crime that requires that specific intent.

"Only if Mr. Dise struck the patients with specific intent to deprive the patients of their right of liberty, as secured by the Constitution, and as I have defined that to you, may you find the defendant guilty under the statute.

"Therefore, you would have to find beyond a reasonable doubt that Mr. Dise had the specific intent to deprive the patients of the constitutionally protected right of liberty, that their physical persons be not invaded by the use of excessive, unreasonable and unnecessary force.

"Of course, I would point out that not every striking by a public official would constitute a violation of the constitutional rights of the patient, it's only when it is excessive, unreasonable and unnecessary, and beyond that which is authorized under the state law for them to impose."

Dise urges that the court's instruction is inconsistent with the elements of the offense proscribed by section 242, as that offense is defined by *Screws v. United States*, 325 U.S. 91, 103, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945). The objection, as best we can discern it, is that the charge permitted the jury to find guilt on the basis of a bad purpose or evil intent alone. The jury was instructed that it could find that Dise acted willfully if he acted "with a bad purpose to disobey or disregard the law." The court further instructed the jury that although the government did not have to prove that Dise was thinking in constitutional terms, it was required to prove that Dise used excessive force against the inmates of Pennhurst knowing that his actions were "beyond that which would be allowed by state law." Under *Screws v. United States*, the government must prove

beyond a reasonable doubt that the defendant willfully violated a federal right. 325 U.S. at 103, 65 S.Ct. at 1036. The government need not demonstrate, however, that the defendant was aware that the right was protected by the Constitution or that the defendant was "thinking in constitutional terms," *id.* at 106, 65 S.Ct. at 1037. These two superficially conflicting mandates of *Screws* are reconciled by the Court's recognition that willfulness encompasses "reckless disregard of a constitutional requirement." *Id.* at 105, 65 S.Ct. at 1037. Hence, although a defendant may not have expressed an intention to violate the Constitution, and indeed may not have recognized that his acts violate the Constitution, he may be found to have willfully violated federal rights if he acted in reckless disregard of the law as he understood it. *Screws* held that such specific intent may be inferred from circumstantial evidence. *Id.* at 106, 65 S.Ct. at 1037. The Court adopted this interpretation so that § 242 would not "become a trap for law enforcement agencies acting in good faith." *Id.* at 104, 65 S.Ct. at 1037.

■■■■ We hold that when a person acting under color of state law invades the personal liberty of another, knowing that such invasion is in violation of state law, he has demonstrated bad faith and reckless disregard for constitutional rights. This holding is consistent with those of a number of federal courts that have endorsed jury instructions directing the jury to find willfulness for purposes of section 242 if it finds that the defendant intended to do an unlawful act, even if the defendant was not thinking in constitutional terms. In *United States v. McClean,* 528 F.2d 1250, 1254–55 (2d Cir.1976), the court rejected the defendants' contention that they should be shielded from prosecution under section 242 since they intended only to violate New York State law, and the government had not demonstrated specific intent to violate *federal* law. In *United States v. Calhoun,* 726 F.2d 162, 163 (4th Cir.1984), the court equated bad faith and willfulness. *See also United States v. Ehrlichman,* 546 F.2d 910, 921 (D.C.Cir.1976), *cert. denied,*

429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977); *United States v. Senak,* 527 F.2d 129, 149 (7th Cir.1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976); *United States v. Stokes,* 506 F.2d 771, 776–77 (5th Cir.1975). Since the jury was instructed that Dise could be found to have acted willfully only if it found that "he knew he was using excessive … force beyond that which was permitted to him under the law of the State of Pennsylvania," the charge did not permit a guilty verdict on the basis of bad purpose or evil intent alone. The charge is entirely consistent with *Screws.*

### III.

### Evidence of Other Crimes

Dise testified in his own defense. The thrust of his testimony was that when he struck Pennhurst inmates he had no intention of depriving them of their civil rights, but was only acting to maintain safety or to prevent harm. On cross-examination of Dise, and in rebuttal, the government was permitted to elicit testimony tending to show that in instances other than those charged in the indictment Dise had engaged in acts of misconduct toward inmates, such as kicking them in the buttocks as they filed out of a room, menacing them with a two-by-three wooden post, and deliberately throwing cigarette butts to the floor so that more severely retarded inmates would ingest them. Dise contends that the admission of this evidence was reversible error.

■■■■ Fed.R.Evid. 404(b) provides that evidence of other crimes, wrongs, or acts is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The evidence was plainly relevant on the issue of Dise's willfulness. The incidents were logically connected to the offenses charged. Thus the evidence was admissible unless excluded at the trial court's discretion pursuant to Fed.R.Evid. 403. We find no abuse of discretion here. The inci-

dents were particularly probative of Dise's intent to harm, an intent he explicitly denied. The extrinsic incidents in issue were quite similar to those charged, and suggested a similar intent. Those incidents occurred during the same month as those charged in ten counts of the indictment. The evidence was not admitted during the government's case in chief, but only after Dise, by his testimony, made his intent the central issue of the case. We cannot hold that the court abused its discretion in admitting the evidence. *See United States v. Simmons,* 679 F.2d 1042, 1050 (3d Cir. 1982).

## IV.

### Denial of The Motion to Dismiss the Indictment

■ Dise moved to dismiss a superseding indictment because, after the initial indictment, new evidence was presented to the grand jury, resulting in the addition of two counts. He contends that this permitted the government to use the grand jury for the sole purpose of securing additional evidence for use at trial. There is no record support for that contention. The grand jury was free to inquire into other charges. *In re Grand Jury Proceedings,* 632 F.2d 1033, 1041 (3d Cir.1980). It returned an indictment making additional charges. Dise has not shown that it did not act other than in a good faith investigation of those charges.

## V.

### Conclusion

The evidence was sufficient to submit the section 242 charges to the jury. The court's instruction on the elements of the crime proscribed by that section were correct. The trial court did not err in admitting evidence of similar misconduct by Dise. The motion to dismiss the indictment was properly denied. The judgment appealed from will, therefore, be affirmed.