**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3406
_____

UNITED STATES OF AMERICA

v.

AMIN A. RASHID,

　　　　　　　　　　　Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-08-cr-00493-001)
District Judge:  Honorable Cynthia M. Rufe

_____

Submitted under Third Circuit LAR 34.1(a)
on November 17, 2014

Before:  RENDELL, JORDAN and NYGAARD, <u>Circuit Judges</u>.

(Filed: November 25, 2014)

_____

O P I N I O N*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, <u>Circuit Judge</u>:

Appellant Amin A. Rashid appeals from a judgment imposed by the District Court, sentencing him to 240 months imprisonment after his conviction at trial of nine counts of mail fraud and eight counts of aggravated identity theft. Through his entity, the Center for Constitutional and Criminal Justice, Inc. (the "Center"), Rashid received fees in exchange for agreeing to help his clients prevent or reverse sheriff's sales of their homes. Typically, Rashid's clients still lost their homes and Rashid kept the fees. Rashid also stole his clients' identities and used them to collect proceeds due to the prior owners of properties sold at sheriff's sales. City Line Abstract Company ("City Line"), a title insurance company used in connection with the various sheriff's sales, issued distribution policies that ultimately paid Rashid over $600,000. Rashid appeals pro se both his conviction and sentence.[1] We will affirm.

### A. Suppression

First, the District Court did not err in declining to hold an evidentiary hearing on Rashid's motion to suppress evidence obtained from the Center.[2] In the affidavit

---

[1] We have appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

[2] We "review the district court's denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Kennedy,* 638 F.3d 159, 163 (3d Cir. 2011) (alteration in original) (quoting *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008)). "We review for abuse of discretion a district court's denial of an evidentiary hearing on a motion to suppress." *United States v. Hines*, 628 F.3d 101, 104 (3d Cir. 2010). Federal Rule of Criminal Procedure 12(b)(3)(C) permits defendants to file "motions to suppress evidence" before trial, but evidentiary hearings on such motions are not granted as a matter of course. *Hines*, 628 F.3d at 105. A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to show that (1) the defendant has presented a colorable constitutional claim, and

2

supporting the search warrant for the Center, Postal Inspector Mary Fitzpatrick discussed information provided by Robert Kirbyson. Rashid argued that, based on an interview of Kirbyson on July 31, 2008, Fitzpatrick must not have interviewed Kirbyson until after the search warrant was issued on November 14, 2007, and thus her affidavit must be false. This Court may rely on the entire trial record, not just the evidence of record when the motion was denied. *See United States v. Silveus*, 542 F.3d 993, 1001 (3d Cir. 2008). During trial, Fitzpatrick testified that she and another postal inspector interviewed Kirbyson on November 2, 2007, before the warrant was executed, and Kirbyson was interviewed again on July 31, 2008. Accordingly, the District Court did not abuse its discretion in denying Rashid's request for an evidentiary hearing.

Second, the government did not improperly use grand jury subpoenas issued to Maurice Mander and Mannie Green, after the superseding indictment was issued on May 28, 2009, to obtain evidence for use at trial.[3] Maurice Mander was served with a grand jury subpoena that sought documents relating to "claim tickets and/or receipts regarding items sold by Rashid or on his behalf to a pawn shop; and . . . any documents concerning . . . Michael Whitmer." (J.A. 118a-119a.) Rashid bears the burden of "demonstrat[ing] that the sole or dominant purpose of seeking the evidence post-indictment [was] to

---

(2) there are disputed issues of material fact that will affect the outcome of the motion to suppress. *United States v. Voigt,* 89 F.3d 1050, 1067 (3d Cir. 1996).

[3] In reply, Rashid also raises the argument that the government is judicially estopped from arguing a purportedly different position. This argument was not raised in the opening brief, and so is waived. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (Federal Rule of Appellate Procedure 28 applies equally to pro se litigants).

3

prepare for the pending trial," or that "the grand jury's sole or dominant purpose for seeking enforcement of the subpoena is to continue, unlawfully, to investigate him subsequent to his indictment." *In re Grand Jury Proceedings,* 632 F.2d 1033, 1041 (3d Cir. 1980). The District Court did not clearly err in denying the motion because the subpoena was issued to investigate possible further charges against Rashid. *See United States v. Dise,* 763 F.2d 586, 593 (3d Cir. 1985).

Third, the government properly obtained consent to search the property at 1014 N. 63rd Street.[4] That property was owned by Dr. Theodore Pride, conveyed in July 2009 to a trust operated by Rashid, and then sold at sheriff's sale to Mannie Green. The District Court properly rejected Rashid's argument that because the property was owned by the trust prior to the sheriff's sale, only he could have provided consent to remove evidence. In late June 2009, Green gave his consent for Fitzpatrick to take documents and computers located on the property.[5] The information Fitzpatrick obtained gave her a reasonable belief that Green was the owner of the property, even if there were some outstanding question of title following the sheriff's sale. "A search is constitutional if it is based on reasonable belief that a third party had authority to consent." *Bolden v. Se. Pa. Transp. Auth.,* 953 F.2d 807, 828 n.29 (3d Cir. 1991) (citing *Illinois v. Rodriguez,*

---

[4] Because the government properly obtained consent, Rashid's arguments as to the post-indictment subpoena issued to Mannie Green are irrelevant.

[5] Fitzpatrick also obtained consent from Dr. Pride and his son, Todd Pride, to take documents and computers from the property.

497 U.S. 177, 186 (1990)).[6]  Accordingly, the District Court did not clearly err in denying the motion to suppress on the grounds of Green's consent. [7]

### B.  Recusal[8]

Under 28 U.S.C. § 455(a), a judge should no longer preside over a case when a reasonable person, with knowledge of the facts, would conclude that the judge's impartiality might reasonably be questioned.  *United States v. Bergrin*, 682 F.3d 261, 282 (3d Cir. 2012).  To warrant reassignment, a case must generally involve apparent bias from an extrajudicial source, above and beyond judicial rulings or opinions formed in presiding over the case.  *Id.*; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994).  Recusal motions pursuant to 28 U.S.C. § 144, which governs disqualification for bias or prejudice, must include an affidavit stating material facts with particularity which, if true, would lead a reasonable person to conclude that the District Court harbored a special bias or prejudice toward the defendant.  *See United States v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973).  This case was transferred to Judge Rufe after Judge Brody took senior status.  Judge Rufe made statements at one of her first hearings that Judge Brody did not

---

[6] Furthermore, even if Green only had common authority shared with Pride or Rashid, his consent is sufficient.  "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."  *United States v. Matlock*, 415 U.S. 164, 170 (1974).

[7] Because we conclude that the District Court properly denied the motions to suppress, there is no issue that Rashid's property was unlawfully seized, and so the District Court did not err in denying Rashid's motion for return of property under Federal Rule of Criminal Procedure 41(g).

[8] This Court reviews the District Court's denial of motions for recusal for abuse of discretion.  *United States v. Ciavarella*, 716 F.3d 705, 717 n.4 (3d Cir. 2013) (citing *Johnson v. Trueblood*, 629 F.2d 287, 290 (3d Cir. 1980)).

disqualify herself, but was reassigned by the Chief Judge, [9] and that her review of the record did not support disqualification of Judge Brody. [10]  First, under § 455, there is no extrajudicial source demonstrating bias beyond the judicial rulings in the case.  Second, under § 144, none of Judge Rufe's actions demonstrate any personal bias.  Judge Rufe did not abuse her discretion in denying Rashid's request for recusal.

### C. Speedy Trial[11]

The Speedy Trial Act requires that a criminal trial start within seventy days of a defendant's first appearance in court unless the "speedy trial clock" is properly stopped. 18 U.S.C. § 3161(c)(1).  The speedy trial clock does not run during any period of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  *Id.* § 3161(h)(1)(D). This subsection excludes the time actually consumed by consideration of the pretrial motion.  *United States v. Tinklenberg*, 131 S. Ct. 2007, 2014 (2011).  When a pretrial motion requires a hearing, § 3161(h)(1)(D) excludes the entire period between the filing of the motion and the conclusion of the hearing.  When motions are decided on the papers

---

[9] Judge Brody granted Rashid's request for disqualification, and she stated on the record that she was recusing herself because she had recently attained senior status and was no longer required to preside over cases with pro se criminal defendants.

[10] Furthermore, Rashid argues in reply that Judge Rufe showed favoritism for the government because she did not dispose of a certain motion by Rashid before her final judgment, failed to give a ruling on one of Rashid's motions to dismiss the indictment, and failed to approve certain witnesses to be subpoenaed for trial.

[11] The Court exercises plenary review over the District Court's interpretation of the Speedy Trial Act and reviews its factual determinations for clear error.  When the District Court grants a continuance after a proper application of the Speedy Trial Act to established facts, this Court applies an abuse of discretion standard of review.  *United States v. Rivera Constr. Co.,* 863 F.2d 293, 295 n.3 (3d Cir. 1988).

filed, without a hearing, § 3161(h)(1)(H) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *See Henderson v. United States*, 476 U.S. 321, 328-29 (1986). Lastly, the Speedy Trial Act excludes "[a]ny period of delay resulting from a continuance . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

Rashid is incorrect that 119 includable days had accumulated between August 25, 2008, and March 6, 2009. The speedy trial clock began to run on August 23, the day after Rashid's initial appearance on August 22.[12] On August 29, 2008, Rashid filed three discovery motions, and the District Court entered an order excluding the time between the filing of the motions and a future hearing to be scheduled on the motions. Six days had accrued when Rashid filed those motions. The District Court held a hearing over a year later, on November 10, 2009, and denied the motions as moot on November 16.[13] Therefore, the discovery motions tolled the clock from August 29, 2008, to November

---

[12] On August 26, Rashid's counsel filed a motion for enlargement of time to file pretrial motions. Because the District Court never disposed of that motion, it did not toll the speedy trial clock because there is no indication that the motion was "under advisement." *See United States v. Mentz*, 840 F.2d 315, 329 (6th Cir. 1988).

[13] During that hearing, Judge Brody denied multiple other motions filed by Rashid that also tolled the speedy trial clock during the time his initial discovery motions were pending. A motion in limine was filed by Rashid on November 3, 2008, during the time period that Rashid challenges. The pendency of multiple pretrial motions provides another basis for excluding time from the speedy trial calculation. *See United States v. Felton,* 811 F.2d 190, 196-97 (3d Cir. 1987).

16, 2009. *See Henderson,* 476 U.S. at 326. Rashid's motion to dismiss the indictment for a speedy trial violation was properly denied.[14]

### D. Prosecutorial Misconduct

No prosecutorial misconduct occurred in the following statement during closing arguments: "At one point the defendant said, the government has got evidence of this, that, or the other. Well yes, I submit that you've heard evidence the defendant, he cheated and he forged documents over and over again during this case." (Supp. A. 580.) Rashid argues that this was an impermissible personal statement of the defendant's guilt and that there was no factual support for this statement in the record.[15] The challenged statement does not relate to the prosecutor's personal opinion, but rather describes the evidence presented during trial. There was evidence in the record that Rashid had altered copies of his clients' driver's licenses, whether by changing the names on the licenses or

---

[14] Furthermore, even if the discovery motions were only entitled to a thirty-day exclusion, the speedy trial clock would have stopped again on September 3, 2008, with Rashid's request for an open-ended continuance, which was granted on September 8, 2008. This Court has stated that defendants cannot be allowed to request continuances and then claim a speedy trial violation after such continuances are granted. *See United States v. Fields*, 39 F.3d 439, 443 (3d Cir. 1994); *United States v. Lattany*, 982 F.2d 866, 883 (3d Cir. 1992).

[15] Because Rashid did not make a contemporaneous objection to the prosecutor's statement, his challenge is reviewed for plain error. In order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal "egregious error or a manifest miscarriage of justice." *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003) (quoting *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001)). The Court may reverse only if the error in the prosecutor's comments is so serious as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice. *United States v. Walker*, 155 F.3d 180, 188 (3d Cir. 1998). Rashid also requests that, even though there was no contemporaneous objection, this Court review his prosecutorial misconduct claim de novo. When there is a contemporaneous objection, however, the Court instead applies an abuse of discretion standard. *Brennan*, 326 F.3d at 182.

by forging the signatures. Furthermore, evidence was presented at trial that Rashid submitted false corporate documents and resolutions to City Line. The District Court's failure to strike the prosecutor's statements sua sponte does not constitute plain error.[16]

### E. Due Process During Sentencing

Rashid's arguments that the government's witnesses, Ann Marie Kelly and Todd Pride, perjured themselves at sentencing are unavailing.[17] First, Rashid was able to cross-examine them. Second, Rashid argued that certain witnesses who had not been subpoenaed could prove that Pride's and Kelly's testimony was false. The Court agrees with the District Court that Rashid was attempting to use those witnesses to contradict evidence from trial, rather than to address the sentencing factors. The District Court did not abuse its discretion in refusing to hear those witnesses or to strike Kelly's and Pride's testimony.

The District Court also did not commit clear error in ruling that Kelly's loss amount of $26,850 should be included. Loss amount is a sentencing fact that must be found by a preponderance of the evidence. *United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007). Kelly was subject to extensive direct and cross-examination at the May 21

---

[16] In his reply brief, Rashid argues that the government has used false statements to convict him, which is a due process violation. Because we find that the statements made by the prosecutor have support in the record, we need not address this argument.

[17] Appellate review of sentencing decisions is limited to determining whether they are reasonable under the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007). This Court reviews the factual findings relevant to the Sentencing Guidelines for clear error and exercises plenary review over a district court's interpretation of the Guidelines. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007); *see also United States v. Himler*, 355 F.3d 735, 740 (3d Cir. 2004) (loss determination subject to clear error review). We review decisions to admit or exclude evidence at sentencing for abuse of discretion. *United States v. Olhovsky,* 562 F.3d 530, 543 (3d Cir. 2009).

sentencing hearing, during which she testified that she gave Rashid $26,850 based on his misrepresentations that he would help her save her home.[18]

Neither the government nor the probation office were required to offer evidence to support the Presentence Report in the face of Rashid's objections. Rashid argued that the victims summarized in Exhibit 2900, a chart illustrating the government's loss calculations, were improperly considered to be victims. Except for Pride and Kelly, who testified at the sentencing hearing, all other loss amounts were supported by evidence from trial. The District Court concluded that the amounts listed in Exhibit 2900 were an accurate rendering of the testimony and documentary evidence. Because the District Court may rely on trial evidence in making factual determinations at sentencing, there is no clear error in this ruling. *See United States v. DeSumma*, 272 F.3d 176, 181 (3d Cir. 2001).[19]

---

[18] Because the District Court concluded that no loss attributable to Todd Pride's father, Dr. Pride, would be included, the testimony of Dr. Pride in addition to his son was unnecessary.

[19] Lastly, the District Court did not prevent Rashid from subpoenaing witnesses and made clear that Rashid could subpoena witnesses if he chose. Rashid filed a motion requesting transcripts and the service of subpoenas, which the District Court dismissed without prejudice, stating, "The Court does not rule on the propriety of issuing subpoenas at this time. Defendant may issue subpoenas to prospective witnesses for sentencing purposes. Rulings on the relevance and admissibility of witness testimony are reserved for the time of sentencing." (Docket No. 377.) Furthermore, because Rashid was appointed standby counsel and permitted to use up to $500 in investigative services to prepare for sentencing, he did not need court assistance in subpoenaing witnesses.

### F. Sufficiency of the Evidence[20]

Finally, there is sufficient evidence to support Rashid's conviction. Rashid orally moved for acquittal, which the District Court denied. Rashid then filed a written motion for acquittal under Federal Rule of Criminal Procedure 29,[21] in which he argued that he should be acquitted of all aggravated identity theft counts due to "unconstitutional constructive amendment of each count to include a specific reference to a particular mail fraud count not identified by the grand jury." (Docket No. 273.) Rashid filed a supplemental Rule 29 motion, in which he characterized his first motion as seeking reversal of the identity theft convictions. The supplemental motion additionally argued that "the Government did not produce a 'scintilla' of evidence that defendant 'caused' any of the mailings." (Docket No. 280.) The Court denied Rashid's motion, ruling that "[t]he Government's use of demonstrative exhibits did not constructively amend the Superseding Indictment." (Docket No. 320.) Construing Rashid's pro se Rule 29 motion liberally, we conclude that the motion fairly encompasses his identity theft convictions. Accordingly, the Court entertains Rashid's sufficiency challenge regarding the mailings and how those mailings affect his identity theft charges.[22]

---

[20] When a defendant challenges the sufficiency of evidence upon which he was convicted, we must view the evidence in the light most favorable to the government, and will only overturn a jury's verdict when the record contains no evidence, regardless of its weight, from which the jury could find guilt beyond a reasonable doubt. *United States v. Riley,* 621 F.3d 312, 329 (3d Cir. 2010).

[21] A timely motion for acquittal under Rule 29(c) preserves a sufficiency-of-the-evidence claim for review, irrespective of whether the defendant raised the claim at trial. *United States v. Miller*, 527 F.3d 54, 62 (3d Cir. 2008).

[22] Rashid also raises in reply a "jurisdictional" argument that the government failed to establish that the production, transfer, possession, or use of the means of identification is

11

First, the elements of mail fraud are (1) a scheme or artifice to defraud for purposes of obtaining money or property; (2) participation by the defendant with specific intent to defraud; and (3) use of the mails in furtherance of the scheme. *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012). It is irrelevant whether Rashid obtained profits because the success of a scheme is not relevant to a mail fraud conviction; it is sufficient that the defendant had the intent to defraud. *United States v. Frey*, 42 F.3d 795, 800 (3d Cir. 1994).[23] Second, there was sufficient evidence at trial that Rashid caused the mailings at issue. "A defendant 'causes' the mails to be used where the defendant 'does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . . .'" *United States v. Tiller,* 302 F.3d 98, 101 (3d Cir. 2002) (alteration in original) (quoting *Pereira v. United States,* 347 U.S. 1, 8-9 (1954)). "[T]he defendant need not personally send the mailing or even intend that it be sent." *Id.* The documents charged in counts one and two were obtained as a result of a search warrant and had been mailed, but returned to sender. Furthermore, a City Line employee testified that Rashid mailed the letters and documents charged in counts three through nine.[24]

---

in or affects interstate or foreign commerce. This argument was not included in Rashid's opening brief; therefore, it is waived. *See Foster Wheeler Energy Corp.*, 26 F.3d at 398; *see also Anderson*, 241 F.3d at 545.

[23] In any event, the record demonstrates that Rashid did obtain profits. There was evidence that the victims paid Rashid fees that were not refunded. Furthermore, there was evidence in the record that Rashid deposited thousands of dollars in checks written to him from the Center into bank accounts that he controlled.

[24] Lastly, the District Court did not err in concluding that the indictment was not constructively amended. The government's exhibits during closing were used to link

For the foregoing reasons, we will affirm Rashid's conviction and the sentence imposed by the District Court.[25]

---

each aggravated identity theft count to a specific mail fraud count.  This demonstration did not expand the conduct or the counts charged in the superseding indictment.

[25] In light of our affirmance of Rashid's conviction and sentence, the following motions filed by Rashid in this Court are moot:  (1) Motion by Appellant for Summary Reversal Pursuant to I.O.P. 10.6 and L.A.R. 27.4 Without Forfeiting Right to Brief Other Issues; (2) Motion by Appellant for Summary Reversal Pursuant to I.O.P. and L.A.R. 27.4 as to Denial of Rule 29 Acquittal Motion; (3) Motion by Appellant to Clarify the Court's Jurisdiction, or in the Alternative, for Limited Remand to the District Court; and (4) Motion by Appellant for Summary Reversal of All Identity Theft Counts Pursuant to I.O.P. 10.6 and L.A.R. 27.4.